**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
GILBERT THOMAS              :
GREENFIELD, JR.,            :
                            :   Civil Action No. 09-1969 (JLL)
          Petitioner,       :
                            :
     v.                     :   OPINION
                            :
DEPARTMENT OF CORRECTIONS,  :
et al.,                     :
                            :
          Respondents.      :
```

**APPEARANCES:**

> GILBERT THOMAS GREENFIELD, JR., Petitioner Pro Se
> # 375
> Special Treatment Unit
> 8 Production Way
> Avenel, New Jersey 07001
>
> DAVID L. DACOSTA, ESQ.
> OFFICE OF THE N.J. ATTORNEY GENERAL
> R.J. Hughes Justice Complex
> 25 Market Street, P.O. Box 112
> Trenton, New Jersey 08625
> Counsel for Respondents

**LINARES,** District Judge

Petitioner Gilbert Thomas Greenfield, Jr., a civilly committed person under the New Jersey Sexually Violent Predators Act ("SVPA"), N.J.S.A. 30:4-21.1 et seq., brings a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a New Jersey state court judgment and order of commitment issued against him on or about August 22, 2005. For the reasons stated herein, the Petition will be denied for lack of substantive merit.

I.   <u>BACKGROUND</u>

A.   <u>Factual Background</u>[1]

A portion of the state court's recitation of the facts in

this matter is excerpted below:

> On July 26, 1985, a twenty-one-year-old woman who we
> identify as D.W. was at a shopping mall in South Plainfield,
> New Jersey.  G.T.G. approached her and inquired about a "for
> sale" sign in the window of her car.  G.T.G. asked if he
> could take a test drive and D.W. agreed.  D.W. drove the car
> and G.T.G. was in the passenger seat.  He pulled a knife and
> demanded that D.W. continue driving.  G.T.G. then stabbed
> D.W. in the right chest area.
>
> D.W. indicated that, because of the stab wounds, she could
> not drive.  G.T.G. instructed D.W. to move to the passenger
> seat and he drove the vehicle.  G.T.G. told D.W. that she
> and her family would be physically harmed if she resisted.
> G.T.G. then directed D.W. to perform oral sex upon him while
> he was driving.  She complied, in fear of further injury.
>
> G.T.G. eventually drove to a baseball field in Bernards
> Township.  He forced D.W. to exit the vehicle and took her
> to a nearby wooded area, where he removed her shoes, pants
> and underwear, and vaginally raped her.  Thereafter, G.T.G.
> tied D.W. to a tree with her belt and told her he would kill
> her if she reported the incident to the police.  G.T.G.
> drove off in D.W.'s car, which contained her purse and $45
> in cash.  D.W. untied herself and stopped a passing motorist
> for help.
>
> D.W. informed police of the incident.  Later that evening,
> the police stopped G.T.G. while he was driving in D.W.'s
> car.  He admitted the alleged offenses.  He stated that he
> had the day off, drank "a lot" of whiskey, and took three
> "hits" of LSD prior to the assault.  G.T.G. asserted that he
> believed his behavior was getting worse and he would kill
> someone in the future if he did not get help.
>
> G.T.G. was arrested, taken into custody, and charged
> accordingly.  On January 24, 1986, G.T.G. pled guilty to

---

[1] <u>See</u> 28 U.S.C. § 2254(e)(1).

2

aggravated assault; possession of a weapon for an unlawful purpose; kidnapping; aggravated sexual assault; and robbery.

Defendant was sentenced to twenty years in a State correctional facility for kidnapping, with a ten-year period of parole ineligibility; a concurrent fifteen-year term for robbery; a concurrent ten-year term for aggravated assault; and a concurrent five-year term for possession of a weapon for an unlawful purpose.  Defendant also was sentenced to a consecutive ten-year term for aggravated sexual assault, with a five-year period of parole ineligibility, to be served at the Adult Diagnostic and Treatment Center (ADTC) at Avenel.

Defendant appealed his sentence, and the appeal was heard on our Excess Sentence Oral Argument calendar.  We entered an order on April 29, 1987, which affirmed the sentences but ordered that the judgment be modified to provide that the sentence at the ADTC be served before the State prison sentence.  However, due to an apparent administrative error, G.T.G. served his State prison term first, and then was transferred to the ADTC.  Thereafter, the New Jersey State Parole Board granted parole, effective as of November 17, 2004.

On November 10, 2004, the Attorney General filed a  petition in the Law Division seeking G.T.G.'s civil commitment pursuant to the SVPA.  The court entered an order on November 17, 2004, finding that there was probable cause to believe that G.T.G. is a sexually violent predator requiring civil commitment.  G.T.G. was temporarily committed at the Special Treatment Unit (STU) pending a final hearing in the matter.

Judge Serena Peretti conducted the commitment hearing on six dates beginning on June 6, 2005.  The State presented testimony from Dr. Michael McAllister, Dr. Robert Carlson, Dr. Merrill Main, and Thomas Calabrese.  G.T.G. presented testimony from Dr. Barbara Schwartz and Cynthia Holshue.

Judge Peretti placed her decision on the record on August 22, 2005, in which she concluded that the State had proven by clear and convincing evidence that G.T.G. was a sexually violent predator in need of civil commitment at the STU pursuant to the SVPA.  The judge entered an order on August 22, 2005, which memorialized her findings. ...

3

(Respondents' Exhibit A,[2] March 19, 2008 Appellate Division Opinion at pp. 2-4).

B.  Procedural History

On November 10, 2004, the Attorney General for the State of New Jersey filed a petition in the Superior Court of New Jersey, Law Division, Essex County, seeking to commit petitioner Gilbert Thomas Greenfield, Jr. ("Greenfield") pursuant to the SVPA.  On November 17, 2004, the Honorable Phillip Lewis Paley, J.S.C., entered an Order for Temporary Civil Commitment, directing that Greenfield remain in custody at the Special Treatment Unit ("STU") pending a final commitment hearing in the matter.

---

[2]  The State provided the relevant state court record exhibits with their answer, as follows:

**Exhibit A:** March 19, 2008 Appellate Division Opinion, Docket entry no. 11-3.
**Exhibit B:** State's appellate brief on appeal from commitment order, Docket entry no. 11-4.
**Exhibit C:** Petitioner's appellate brief on appeal from the commitment order, Docket entry no. 11-5.
**Exhibit D:** Deposition excerpt from commitment trial, dated July 6, 2005, Docket entry no. 11-6.
**Exhibit E:** Deposition excerpt from commitment trial, dated July 7, 2005, Docket entry no. 11-7.
**Exhibit F:** Deposition excerpt from commitment trial, dated July 15, 2005, Docket entry no. 11-8.
**Exhibit G:** Deposition excerpt from commitment trial, dated August 15, 2005, Docket entry no. 11-9.
**Exhibit H:** Affidavit of Carol Chimento, attaching relevant exhibits - Exhibit 1: August 22, 2005 Judgment and Order of Commitment; Exhibit 2: April 26, 2006 "Waiver of Right to Hearing" form signed by petitioner; and Exhibit 3: June 28, 2006 "Waiver of Right to Hearing" form signed by petitioner.  Docket entry no. 11-10.

Greenfield waived his right to a hearing within twenty days of his temporary commitment, and his initial commitment hearing was scheduled to be held on June 6, 2005.  The Honorable Serena Perretti, J.S.C. adjourned the commitment hearing until July 6, 2005, and the hearings were held on that date as well as on July 7, 2005, July 15, 2005, August 15, 2005, and August 22, 2005.  In a decision and order dated August 22, 2005, Judge Perretti granted the State's petition for Greenfield's commitment pursuant to the SVPA and set a one-year review date.

On September 30, 2005, Greenfield filed a Notice of Appeal from the order of commitment before the Superior Court of New Jersey, Appellate Division.  On appeal, Greenfield raised the following issues:

> 1.  The Attorney General does not have jurisdiction to seek SVPA commitment of an offender who has been granted parole.
>
> 2.  Principles of administrative comity and res judicata bar the Attorney General from attempting to circumvent the Parole Board's decision in this matter.
>
> 3.  The State failed to prove by clear and convincing evidence that G.T.G. is subject to civil commitment under the SVPA.
>
> 4.  The trial court erred in admitting hearsay materials into evidence over the objection of G.T.G.

On March 19, 2008, the Appellate Division denied Greenfield's appeal and affirmed the order of civil commitment in an unpublished opinion.  Greenfield did not file a petition for certification to the Supreme Court of New Jersey.

Prior to the Appellate Division's ruling on Greenfield's appeal from the commitment order, on April 26, 2006 and June 28, 2006, Greenfield signed a "Waiver of Right to Hearing" form in which he waived his right to his one-year commitment review hearing while his state appeal is pending.

On or about April 22, 2009, Greenfield filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State filed an answer to the petition, together with the relevant state court record, on January 6, 2010. Greenfield filed a reply/traverse on March 29, 2010.

## II.   STATEMENT OF CLAIMS

Greenfield asserts the following claims in his petition for habeas relief:

A.   Ineffective assistance of appellate counsel during appeal of commitment order. Namely, counsel failed to file a petition for certification to the Supreme Court of New Jersey, and failed to brief three issues raised in petitioner's Notice of Appeal.

B.   Petitioner was denied his constitutionally protected right of appeal.

C.   Petitioner was denied his right to due process when state correctional officials refused to transport petitioner to his commitment hearing.

D.   Petitioner was denied his constitutionally protected right to a fair and unbiased commitment hearing because the court relied on hearsay evidence and improperly weighted expert testimony.

E.   Petitioner has been denied his constitutionally protected right to a commitment hearing every year as provided by statute, namely, N.J.S.A. 30:4-27.

The State essentially contends that the petition should be denied for lack of substantive merit.  The State further argues that the petition should be dismissed for failure to exhaust state court remedies.

## III.   STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law.  28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dep't, 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of

7

constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982).  Generally, "[i]f a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable," Engle v. Isaac, 456 U.S. 107, 120 n. 19 (1982), and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

"Errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). In addition, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law,

or was based on unreasonable determination of the facts in light of the evidence before the state court.  See 28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings."  28 U.S.C. § 2254(d).  "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004)(citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).  A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  See Rompilla, 355 F.3d at 247.  See also Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538 U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)(even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference)).  On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply."  Rolan, 445 F.3d at 678.  See also Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000)(with respect to claims presented to, but unadjudicated by, the state courts, however, a

9

federal court may exercise pre-AEDPA independent judgment), <u>cert.</u> <u>denied</u>, 532 U.S. 924 (2001); <u>Purnell v. Hendricks</u>, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).

Thus, if the New Jersey courts adjudicated the petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  <u>See</u> 28 U.S.C. § 2254(d).  Accordingly, this Court may not grant habeas relief to the petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, <u>see</u> 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and petitioner is in custody in violation of the Constitution or laws or treaties of the United States.  <u>See</u> 28 U.S.C. § 2254(a), (d)(2).

When the grounds raised in the petition are governed by 28 U.S.C. § 2254(d)(1), the court must begin its analysis by determining the relevant law clearly established by the Supreme Court.  <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the

time the state court renders its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U .S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." <u>Williams</u>, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id</u>. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[3] <u>See id</u>. at 409-10. "The unreasonable application test is an objective one-a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." <u>Thomas v. Varner</u>, 428 F.3d 491, 497 (3d Cir. 2005) (quoting <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d Cir. 2005)).

_____

[3] <u>See also</u> <u>Marshall v. Hendricks</u>, 307 F.3d 36, 71 n. 24 (3d Cir. 2002)("[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent.")(citations and internal quotation marks omitted).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001) (citing 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

III. <u>THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT</u>

The SVPA provides for the civil commitment of individuals convicted of a sexually violent offense who qualify as "sexually violent predators." <u>N.J.S.A.</u> 30:4-27.26.[4]  The SVPA defines a sexually violent predator ("SVP") as a:

> person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

<u>N.J.S.A.</u> 30:4-27.26(b).

When it appears that a person may meet the criteria of an SVP, an "agency with jurisdiction," such as the New Jersey Department of Corrections, provides notice to the New Jersey Attorney General at least ninety days before the anticipated release of this individual.  <u>N.J.S.A.</u> 30:4-27.26, 30:4-27.27(a)(1).  If the Attorney General concludes that public

---

[4]  In enacting the SVPA, the New Jersey Legislature determined that sexually violent predators require treatment in a facility specifically designated for their control, care and treatment. <u>N.J.S.A.</u> 30:4-27.25. The Legislature also recognized that the nature of the mental conditions from which sexually violent predators suffer, and the danger they present, make it necessary to house those identified as sexually violent predators in an environment separate from patients generally civilly committed or otherwise confined.  <u>Id.</u>, <u>N.J.S.A.</u> 30:4-27.34(a).

The Department of Corrections is responsible for the operation of any facility designated for the custody, care and treatment of sexually violent predators and shall provide or arrange for custodial care of persons committed as sexually violent predators.  In contrast, the Division of Mental Health Services shall provide or arrange for *treatment* of persons committed under the SVPA.  <u>N.J.S.A.</u> 30:4-27.34(a), (b).

safety warrants involuntary civil commitment, a petition for commitment is initiated, supported by two clinical certifications, one of which must be from a psychiatrist who has examined the individual no more than three days before the submission of the petition for commitment. <u>N.J.S.A.</u> 30:4-27.26; 30:4-27.28.

Upon receipt of this petition, the court conducts a temporary commitment hearing. <u>N.J.S.A.</u> 30:4-27.28(f). At this hearing, the court examines the supporting certifications and determines whether probable cause exists to believe that the individual qualifies as an SVP. <u>Id</u>. If the court finds probable cause, it issues an order authorizing temporary commitment to a secure facility designated for the care, control and treatment of SVPs, pending a final hearing. <u>Id</u>. The SVPA mandates that the individual under a temporary commitment order shall not be released from confinement before the final hearing, which will be scheduled within twenty (20) days after the initial hearing. <u>N.J.S.A.</u> 30:4-27.28(f), 30:4-27.29(a).

Following the initial hearing, the court appoints counsel, if necessary. The person under a temporary commitment order and his/her counsel shall be provided with the following at least ten (10) days before the final hearing: (1) copies of the clinical certificates and supporting documents, (2) the temporary commitment order, and (3) a statement of the SVP's rights at the final hearing. <u>N.J.S.A.</u> 30:4-27.30(a). The individual is

14

afforded the following rights at his/her final hearing: (1) the right to be represented by counsel or, if indigent, by appointed counsel; (2) the right to be present at the court hearing unless the court determines that because of the individual's conduct at the court hearing the proceeding cannot reasonably continue while the individual is present; (3) the right to present evidence; (4) the right to cross-examine witnesses; and (5) the right to a hearing in camera. <u>N.J.S.A.</u> 30:4-27.31.

At the final hearing, the court hears evidence including testimony related to the clinical basis for involuntary commitment from a psychiatrist on the individual's treatment team, who has conducted a personal examination of the individual within five (5) days of the final hearing. <u>N.J.S.A.</u> 30:4-27.30(b). If the court determines by clear and convincing evidence that the individual qualifies as an SVP, the court issues an order of involuntary commitment. <u>N.J.S.A.</u> 30:4-27.32(a).

Persons committed under the SVPA have a right to appeal the determination, to petition for discharge at any time, and to receive annual review hearings. <u>N.J.S.A.</u> 30:4-27.35, <u>N.J.S.A.</u> 30:4-27.36. In addition, the New Jersey Department of Health and Human Services ("NJDHS") may recommend termination of commitment. <u>N.J.S.A.</u> 30:4-27.36.

The United States Court of Appeals for the Third Circuit has held that the SVPA is a civil, not criminal, statute. <u>See</u>

15

<u>Aruanno v. Hayman</u>, No. 09-3499, 384 Fed. Appx. 144, 2010 WL 2381047 (3d Cir. June 14, 2010), <u>pet. for cert. filed</u> (Oct. 25, 2010).

IV. <u>ANALYSIS</u>

A.   <u>Ineffective Assistance of Appellate Counsel</u>

Greenfield's first claim asserts that he was denied his constitutional right to effective assistance of appellate counsel because his appellate counsel failed to file a petition for certification to the New Jersey Supreme Court with respect to Greenfield's appeal from the judgment of civil commitment, failed to raise arguments on appeal as requested by petitioner, and failed to provide petitioner with copies of the transcripts of the oral arguments at Greenfield's commitment hearing.

Greenfield argues that the focus is not his right to counsel "per se", but that counsel's behavior was so deficient because of bias and prejudice.  Greenfield admits that he did not exhaust the issues surrounding this ground of ineffective assistance of counsel because the State does not offer any post-conviction remedies for civil commitment.

In addition to the defense that Greenfield failed to exhaust his state court remedies with respect to his ineffective assistance of counsel claim,[5] the State contends that, although

_____

[5]   Under 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

the SVPA provides that an SVP subject to involuntary civil commitment be provided with counsel at the commitment hearing, there is no requirement that counsel be provided after the commitment hearing has concluded.  Further, the State argues that even if Greenfield had a right to counsel on direct appeal from the order of civil commitment, there is no constitutional requirement that counsel be provided to seek discretionary review beyond that stage.  See Wainwright v. Torna, 455 U.S. 586, 587-88 (1982)(holding that a criminal defendant has no constitutional right to counsel to pursue discretionary review in a State's highest court, and therefore was not deprived of effective assistance of counsel by counsel's failure to seek such review).

     The State also argues that Greenfield has not demonstrated any prejudice from counsel's failure to seek discretionary review from the Supreme Court of New Jersey.  Greenfield's claims involve purely state law issues and evidentiary issues that do not reach constitutional dimension.

     The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI. Because the Sixth Amendment right to counsel, by its express terms, applies only to criminal proceedings, Greenfield has no Sixth Amendment right to effective assistance of counsel in a civil commitment proceeding.  Cf. Allen v. Illinois, 478 U.S. 364 (1986)(holding that Fifth Amendment Self-Incrimination Clause

does not apply in civil commitment proceedings under Illinois Sexually Dangerous Persons Act because proceeding were not criminal, and Fourteenth Amendment's guarantee of due process does not independently require application of the privilege).

However, the Due Process Clause may independently require the provision of counsel to indigent litigants in certain non-criminal proceedings. In <u>Vitek v. Jones</u>, 445 U.S. 480 (1980), the majority held, per the concurring opinion of Justice Powell, that, although a state is free to appoint a licensed attorney to represent a prisoner who is threatened with involuntary commitment to a mental hospital, due process does not require the appointment of counsel and is satisfied so long as a prisoner is provided an independent adviser who is not a lawyer:

> The essence of procedural due process is a fair hearing. I do not think that the fairness of an informal hearing designed to determine a medical issue requires participation by lawyers. Due process merely requires that the State provide an inmate with qualified and independent assistance. Such assistance may be provided by a licensed psychiatrist or other mental health professional. Indeed, in view of the nature of the issue involved in the transfer hearing, a person possessing such professional qualifications normally would be preferred. As the Court notes, "[t]he question whether an individual is mentally ill and cannot be treated in prison 'turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists.'" <u>Ante</u> at 1265, quoting <u>Addington v. Texas</u>, 441 U.S. 418 ... (1979). I would not exclude, however, the possibility that the required assistance may be rendered by competent laymen in some cases. The essential requirements are that the person provided by the State be competent and independent, and that he be free to act solely in the inmate's best interest.
>
> In sum, although the State is free to appoint a licensed attorney to represent an inmate, it is not constitutionally required to do so. Due process will be satisfied so long as

18

an inmate facing involuntary transfer to a mental hospital is provided qualified and independent assistance.

Vitek, 445 U.S. at 500 (Powell, J., concurring).

Similarly, in Washington v. Harper, 494 U.S. 210, 235-36 (1990), the Court held that a prisoner has a protected liberty interest in avoiding the forced administration of antipsychotic drugs, but due process is satisfied by notice, the right to be present at an adversarial hearing, the right to present and cross-examine witnesses, and the provision of an independent lay adviser who understands the psychiatric issues involved; the Court emphasized that due process does not require the provision of an attorney.  And in Gagnon v. Scarpelli, 411 U.S. 778, the Court declined to hold that indigent probationers have a per se right to counsel at revocation hearings.

On the other hand, in In re Gault, 387 U.S. 1, 41 (1967), the Supreme Court determined that "the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed," an indigent juvenile has a right to appointed counsel, even though proceedings may be styled "civil" rather than "criminal."  As the Court explained in Lassiter v. Dep't of Social Services of Durham County, N.C., 452 U.S. 18, 26-27 (1981), "the Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an indigent litigant

19

has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty."

In light of the foregoing, this Court will assume without deciding that an indigent person has a due process right to the appointment of counsel in a civil commitment proceeding to determine if he is a sexually violent predator, and that the standard set forth in Strickland v. Washington, 466 U.S. 668, 686 (1984), governs such an ineffective assistance of counsel claim.

Under Strickland, a claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id. To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. A court need not address both components of an ineffective assistance claim "if the

defendant makes an insufficient showing on one." <u>Strickland</u>, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Id</u>.

In this case, Greenfield asserts that he was denied effective assistance of counsel based on his counsel's failure to: (1) raise certain arguments on appeal that Petitioner had presented to her,[6] (2) file a petition for certification with the Supreme Court of New Jersey, and (3) provide petitioner with a copy of the transcript of oral argument on the civil commitment hearing. Based on the reasons that follow, this Court finds that each of the foregoing claims fail because Petitioner has not demonstrated either deficient performance by counsel or prejudice.

---

[6] Greenfield asked counsel to raise three issues: (1) that he was denied due process by, among other things, the State's continual refusal to transport petitioner to his own hearing; (2) the court did not properly consider petitioner's risk to re-offend in the foreseeable future; and (3) the court improperly weighed the expert testimony and relied on hearsay evidence as substantial evidence.

Greenfield's counsel instead raised the following issues on appeal: (1) the attorney general does not have the jurisdiction to seek SVPA commitment of an offender who has been granted parole; (2) principles of administrative comity and <u>res judicata</u> bar the attorney general from attempting to circumvent the parole board's decision in this matter; (3) the State failed to prove by clear and convincing evidence that petitioner was subject to civil commitment under the SVPA; and (4) the trial court erred in admitting hearsay materials into evidence over the objection of petitioner.

First, Greenfield complains that his counsel failed to raise certain claims on his behalf on appeal.  As a general matter, Greenfield has shown neither deficient performance nor prejudice in the alleged failures of counsel to assert all the claims that Greenfield wanted counsel to raise.  See  Knowles v. Mirzayance, 129 S.Ct. 1411, 1421-22 (2009) ("The law does not require counsel to raise every available nonfrivolous defense"); Jones v. Barnes, 463 U.S. 745, 751 (1983)("Neither Anders nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points"). Without more, Petitioner has failed to demonstrate deficient performance by his counsel in making the strategic decision not to raise the foregoing arguments on appeal and, more relevantly, has failed to demonstrate a reasonable probability that the outcome of his state court proceedings would have been different had she raised these arguments on appeal.

Next, Greenfield maintains that his counsel was ineffective in failing to file a petition for certification to the New Jersey Supreme Court.  The State argues that there is no constitutionally deficient performance as there is no constitutional requirement that counsel be provided to seek discretionary review beyond the civil commitment hearing stage. This Court agrees with the State.  The Supreme Court has held

that a criminal defendant has no constitutional right to counsel to pursue discretionary review in a State's highest court, and therefore was not deprived of effective assistance of counsel by counsel's failure to seek such review. See Wainwright v. Torna 455 U.S. 586, 587-88 (1982). Moreover, the Supreme Court applied Wainwright v. Torna to collateral review of a death sentence. See Coleman v. Thompson, 501 U.S. 722, 752 (1991). Accordingly, in this case involving a civil committee pursuing a discretionary appeal, and not a criminal defendant pursuing a direct appeal where assistance of counsel is guaranteed as a matter of right, the Court finds no ineffective assistance of counsel where counsel failed to seek discretionary review before the New Jersey Supreme Court.

With regard to petitioner's related claim that he was denied his constitutionally protected right to appeal, the Court finds that Greenfield likewise fails to state a claim. Greenfield's claim suggests that he was denied his right to appeal because his appointed counsel was ineffective. Thus, this claim is merely a restatement of his ineffective assistance of counsel claim, which this Court has rejected because, as stated above, Greenfield has not demonstrated that his appellate counsel was constitutionally deficient in her representation of Greenfield, nor has he demonstrated prejudice from her failure to file for discretionary review before the Supreme Court of New Jersey.

B.  Due Process Violations

Next, Greenfield claims that he was denied due process because he was not transported to several hearings during his civil commitment proceedings.  He also claims that he was denied his right to an annual commitment review hearing.

Because civil commitment represents a profound loss of personal liberty, the Supreme Court has held that civil commitment requires both substantive and procedural due process protection.  See, e.g., Parham v. J.R., 442 U.S. 584 (1979).  In Vitek v. Jones, 445 U.S. 480 (1980), the Supreme Court held that the involuntary transfer of a prisoner to a mental hospital implicates a liberty interest protected by the Fourteenth Amendment's due process clause.  Accordingly, the Court set forth certain minimum procedures to be followed in such civil commitment proceedings: (1) advance written notice that transfer is being considered, (2) a hearing at which the prisoner is given notice of the evidence being relied upon and at which the prisoner may present documentary evidence and be heard in person, (3) an opportunity to present witnesses and to confront and cross-examine witnesses, except upon a finding otherwise for good cause, (4) an independent factfinder, (5) a statement of the evidence relied upon and the reason for transfer, (6) effective and timely notice of all the foregoing rights.  Vitek v. Jones, 445 U.S. at 494-95.

Here, it is undisputed that Greenfield had the right to be present at his civil commitment hearing.  However, he fails to show that he was denied this right in any meaningful way.  For instance, Greenfield's civil commitment proceedings encompassed six hearing dates from which petitioner was absent twice.  On both occasions, there were mechanical difficulties with petitioner's transportation, and petitioner consented to have the hearing proceed without him as his counsel was present.  In fact, this consent was conveyed by Greenfield to his counsel and counsel represented Greenfield's consent to the trial court.

The record indicates that petitioner was absent from the July 15, 2005 hearing that involved the brief testimony of one of his former therapists, who was cross-examined by Greenfield's counsel.  The record further indicates that the other hearing that petitioner did not attend was the hearing where his own expert witness testified.  Thus, Greenfield is hard-pressed to demonstrate any meaningful constitutional deprivation occasioned by his absence from these two hearing dates.[7]

---

[7] Indeed, to the extent that Greenfield's argument here suggests that he was denied his right to confront witnesses against him, the Sixth Amendment's Confrontation Clause applies only to criminal proceedings and the Supreme Court has not held that the Confrontation Clause applies to civil proceedings.  See Carty v. Nelson, 426 F.3d 1064, 1073 (9th Cir. 2005), cert. denied, 547 U.S. 1130 (2006), Baldwin v. Rogers, 2009 WL 1228432 *7 (D.N.J. May 1, 2009); In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 225 (App. Div. 2007).  Moreover, as previously indicated, Greenfield was absent at the hearing where his former therapist testified briefly, and Greenfield's counsel was present to cross-examine that witness on petitioner's behalf.

Therefore, because Greenfield fails to show that he was denied the opportunity to confront and cross-examine witnesses against him, his absence from the only hearing where a former treating psychiatrist testified briefly, and was cross-examined by Greenfield's counsel, does not rise to the level of a constitutional deprivation sufficient to warrant habeas relief in this matter.

Next, in his fifth ground for habeas relief, Greenfield contends that he was denied his right to annual commitment review hearings.  While the State argues that such annual review hearings are not constitutionally guaranteed, only statutorily granted under <u>N.J.S.A.</u> 30:4-27.35, this Court finds that Greenfield's express written waiver of the annual hearing renders this claim moot.  Moreover, the State has indicated that a review hearing was scheduled for February 25, 2010, and no party to date has indicated that the hearing was not conducted or that petitioner again waived the hearing.  Therefore, this claim will be dismissed for lack of merit.


C.  <u>Expert Testimony and Hearsay Evidence</u>

Finally, Greenfield asserts that he was denied his constitutional right to a fair and unbiased commitment hearing because the state court improperly weighed the expert's testimony and relied on hearsay evidence as substantial evidence.  This claim was raised on appeal from the order of civil commitment.

In affirming the order of civil commitment, the Appellate Division found, as follows:

> G.T.G. also contends that the State failed to present clear and convincing evidence to support a finding that he is a sexually violent predator requiring civil commitment under the SVPA.  G.T.G. asserts that his treatment reduced his risk of re-offending and the trial court should have ordered his release in accordance with his proposed discharge plan. G.T.G. further claims that the trial judge improperly rejected Dr. Schwartz's testimony.
>
> To warrant commitment of a person pursuant to the SVPA, the State must prove by clear and convincing evidence that the individual suffers from a mental abnormality or personality disorder that affects his "ability to control his or her sexually harmful conduct." In re Commitment of W.Z., 173 N.J. 109, 127 (2002).  A finding of a total lack of control is not required.  Id. at 126-27.
>
> Rather, a showing of an impaired ability to control sexually dangerous behavior will suffice.  Id. at 127.  The State must establish that "the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will re-offend."  Id. at 132.
>
> We are satisfied from our review of the record that there is sufficient credible evidence to support Judge Perretti's finding that G.T.G. is a sexually violent predator in need of commitment at the STU for custody, care and treatment. The judge's findings of fact are amply supported by the testimony and reports of Dr. McAllister and Dr. Carlson.
>
> We note that Dr. McAllister interviewed G.T.G. and provided a report of his psychiatric evaluation.  Dr. McAllister diagnosed sexual sadism, a history of impulse disorder, not otherwise specified (NOS); a history of alcohol, cocaine, and marijuana abuse; and personality disorder, NOS.  Dr. McAllister stated in his report that although G.T.G. had received sex offender treatment, it had not mitigated his risk of re-offending.  He opined that G.T.G. remains "at grave risk" to re-offend sexually.  In his testimony at the commitment hearing, Dr. McAllister stated that G.T.G. had the "gravest, worst risk to sexually re-offend of anyone that [he has] interviewed [at the STU] so far."
>
> Dr. Carlson also interviewed G.T.G. and provided a report of his psychological evaluation.  He diagnosed paraphilia, NOS;

rule out sexual sadism; polysubstance abuse in institutional remission; and antisocial personality disorder.  In his report, the doctor noted that G.T.G.'s scores on the Static-99 and MnSOST-R tests indicated a high rate of recidivism.[8]

At the commitment hearing, Dr. Carlson testified that he was "conflicted" on the diagnosis of sexual sadism but noted that there are "elements of sexual sadism which have been present in [G.T.G.'s] past sexual history."  Dr. Carlson testified that while G.T.G. has made some progress in treatment, there was a "significant threat" that he would re-offend unless confined in a secure facility.

G.T.G. maintains that the judge erred by accepting the reports and testimony of Dr. McAllister and Dr. Carlson and rejecting the views of Dr. Schwartz, who testified that it is not highly likely that G.T.G. would re-offend if discharged.  We disagree.

As fact-finder, the judge had the discretion to reject some or all of the experts' testimony.  Todd v. Sheridan, 268 N.J. Super. 387, 401 (App. Div. 1993).  We are satisfied that the judge did not abuse her discretion by finding Dr. McAllister's and Dr. Carlson's testimony to be more persuasive than that of Dr. Schwartz.

G.T.G. also contends that the judge erred by admitting into evidence certain documents containing hearsay, including the adult pre-sentence reports, victim statements, and prior psychological evaluations.  The contention is without merit. See in re Civil Commitment of A.X.D., 370 N.J. Super. 198, 201-02 (App. Div. 2004)(holding that treatment records may be considered by the judge in weighing the credibility of the testifying experts in an SVPA commitment hearing); In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 613 (App. Div. 2003)(holding that the judge in an SVPA commitment proceeding may consider facts underlying the committee's prior offenses and pre-sentence reports when relied upon by an expert to evaluate a person's mental condition), certif. denied, 179 N.J. 312 (2004).

Furthermore, G.T.G.'s reliance upon In re Civil Commitment of E.S.T., 371 N.J. Super. 562, 575-76 (App. Div. 2004), is misplaced.  Contrary to G.T.G.'s assertions, the judge in this matter did not consider any hearsay material as

---

[8] The Static-99 and MnSOST-R are actuarial instruments used to predict sexual recidivism.  In re Commitment of R.S., 339 N.J. Super. 507, 517-19 (App. Div. 2001), aff'd, 173 N.J. 134 (2002).

substantive evidence but instead considered that material
only as a basis for evaluating the experts' opinions.

We have considered the other arguments raised by G.T.G. and
find them not to be of sufficient merit to warrant
discussion in this opinion.  R. 2:11-3(e)(1)(E).

(Appellate Division Opinion decided March 19, 2008 at
Respondent's Exhibit A).

To the extent that Greenfield asserts that the admission of
hearsay violated his rights under the Confrontation Clause, the
claim does not warrant habeas relief.  As stated above, the
Confrontation Clause applies only to criminal proceedings – not
to civil commitment proceedings.  See Carty v. Nelson, 426 F.3d
1064, 1073 (9th Cir. 2005); Baldwin v. Rogers, 2009 WL 1228432 at
*7 (D.N.J. May 1, 2009); In re Civil Commitment of T.J.N, 390
N.J. Super. 218, 225 (App. Div. 2007).

To the extent that Greenfield contends that the admission of
hearsay violated his due process rights, he is not entitled to
habeas relief on this ground either.  "[T]he Due Process Clause
does not permit the federal courts to engage in a finely tuned
review of the wisdom of state evidentiary rules."  Marshall v.
Lonberger, 459 U.S. 422, 438 n. 6 (1983).  "A federal habeas
court ... cannot decide whether the evidence in question was
properly allowed under the state law of evidence."  Keller v.
Larkins, 251 F.3d 408, 416 n. 2 (3d Cir.), cert. denied, 534 U.S.
973 (2001); see also Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir.
1978)("As to the contention that the trial court erred in
admitting ... testimony of a prior flirtatious conversation, we

find that, if there was any error in the court's ruling on a discretionary matter, that error was at best one of interpretation of the state's law of evidence and did not arise to constitutional dimensions").  Although New Jersey courts have held that the Due Process Clause limits the use of hearsay in sexually violent predator commitment hearings,[9] this Court is not aware of any Supreme Court case clearly establishing that the admission of hearsay in a sexually violent predator commitment hearing constitutes a violation of due process; in fact, the most relevant Supreme Court cases suggest the contrary.  See, e.g., Hamdi v. Rumsfeld, 542 U.S. 507, 533-35 (2004)(admission of hearsay does not violate due process in enemy combatant proceeding under § 2241); California v. Green, 399 U.S. 149, 164 (1970)("While we may agree that considerations of due process, wholly apart from the Confrontation Clause, might prevent convictions where a reliable evidentiary basis is totally lacking, we do not read Bridges [v. Wixon, 326 U.S. 135 (1945),] as declaring that the Constitution is necessarily violated by the admission of a witness' prior inconsistent statement for the

_____

[9]  See, e.g., In re Civil Commitment of G.G.N., 372 N.J. Super. 42, 58 (App.Div. 2004)("Even without the explicit restriction adopted in Crawford, there is a tipping point where due process is violated by the use of hearsay"); In re Civil Commitment of E.S.T., 371 N.J. Super. 562, 575 ("As a matter of fundamental fairness, we conclude that the State should be required to produce at the initial SVPA commitment hearing the physicians who signed the clinical certificates supporting the commitment petition, if they are available and if any expert testifying in court intends to rely on the opinions contained in those certificates").

truth of the matter asserted"); Estelle v. McGuire, 502 U.S. 62 (1991)(admission of evidence of prior injuries in a trial for infant murder does not violate due process); Spencer v. Texas, 385 U.S. 554, 563-64 (1967)("Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial .... But it has never been thought that such cases establish this Court as a rulemaking organ for the promulgation of state rules of criminal procedure")(citations omitted).

Consequently, this Court finds that, because the Supreme Court has not clearly established that the admission of hearsay in a civil commitment hearing violates due process, the New Jersey courts' rejection of Greenfield's hearsay claim was not contrary to, or an unreasonable application of clearly established federal law, and Greenfield is not entitled to habeas relief on this ground.  See Apanovitch v. Houk, 466 F.3d 460, 487-88 (6th Cir. 2006)(admission of hearsay testimony that reflected that the victim was fearful of petitioner did not violate due process or warrant habeas relief under § 2254); Carty v. Nelson, 426 F.3d at  1075-76 (because "Carty fails to identify any Supreme Court case which imposes an obligation on the ... District Attorney to proffer only live testimony at civil commitment hearings under the SVP Act," claim that admission of the victims' statements was fundamentally unfair does not warrant habeas relief).

31

In sum, the Sixth Amendment right of confrontation, and its attendant limitations on the use of hearsay evidence, does not attach to civil proceedings such as the civil commitment proceedings under the SVPA. See Carty v. Nelson, 426 F.3d 1064, 1073 (9th Cir. 2005); Baldwin, supra; Talbert v.. Goodwin, No. 07-4101, 2009 WL 223710 (D.N.J. Jan. 29, 2009). Petitioner points to no Supreme Court case holding that the Due Process Clause prohibits the use of hearsay testimony in civil commitment proceedings – nor is this Court aware of any such decision. Id.; Bagarozy v. Goodwin, No. 08-0468, 2008 WL 4416455 at *13 (D.N.J. Sept. 23, 2008). Nor did the use of hearsay evidence in this particular case otherwise deprive Greenfield of fundamental fairness. Indeed, as indicated by the Appellate Division, Judge Peretti considered the hearsay material only as a basis for evaluating the experts' opinions and not as substantive evidence. Thus, where Greenfield received advance notice of the hearing, was represented by counsel, presented expert testimony of his own, and had the opportunity to cross-examine the State's expert witnesses, there is no constitutional violation by use of hearsay evidence or expert testimony that would support habeas relief.

A review of the record compels the conclusion that there was clear and convincing evidence to commit Petitioner under the New Jersey SVPA. The decision of the State courts, especially with respect to the court's reliance on expert testimony and use of hearsay material in a limited fashion, was neither contrary to

nor an unreasonable application of  controlling Supreme Court precedent.  Greenfield has failed to direct this Court to any Supreme Court cases that support his contentions in this regard, and this Court discerns no Supreme Court precedent otherwise. Accordingly, Greenfield is not entitled to habeas relief and the petition will be denied for lack of merit.

V.  <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

<b><u>CONCLUSION</u></b>

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue.   An appropriate Order follows.



/s/ Jose L. Linares
JOSE L. LINARES
United States District Judge

DATED: July 27, 2011